IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MERRICK STEDMAN,                           *

     Plaintiff,                          *

v.                                         *          Civil Action No. GLR-20-3470

MICHAEL P. GARLOCK, Correctional           *
Case Management Specialist II,[1]
                                           *
     Defendant.

\*\*\*

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Michael P. Garlock's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 13). The Motion is ripe for disposition and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant Garlock's Motion, construed as one for summary judgment.

## I.     BACKGROUND

### A.     <u>Stedman's Allegations</u>

Plaintiff Merrick Stedman is a state prison inmate presently housed at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. (Compl. at 1, ECF No. 1). He is serving a term of confinement of life plus twenty years for an offense committed when he was a juvenile, and he has a U.S. Immigration and Customs Enforcement ("ICE") detainer lodged against him. (Waiver & Notification Case Management Action ["Waiver"]

---

[1] The Clerk will be directed to correct Defendant Garlock's name as listed in the caption.

at 7, ECF No. 1-1).[2] He alleges that he has been improperly categorized as above minimum-security status because of his nationality, rendering him ineligible for work release. (Compl. at 2). He states that he would have been released three years ago if he were American, but Garlock, his case manager, treated him differently because of his immigration detainer. (Id.). In a subsequent Motion for Leave to File Amended Complaint, Stedman alleges further that Patricia Goins-Johnson, Executive Director Field Support Services; J. Michael Zeigler, Deputy Secretary of Operation; Wayne Hill, Commissioner; and Robert L. Green, Secretary, Department of Public Safety and Correctional Services ("DPSCS") are the individuals responsible for "creating the policy" that led to his unfair treatment. (Mot. Leave File Am. Compl. at 1, ECF No. 17).

**B.    Garlock's Response**

In June 2020, Garlock completed Stedman's annual security classification review and recommended Stedman remain at medium security. (Mem. Supp. Mot. Dismiss Alt. Mot. Summ. J. ["Mot."] at 2–4, ECF No. 13-1; Waiver at 1; Decl. Michael P. Garlock ["Garlock Decl."] ¶ 2, ECF No. 13-3). Garlock avers that he prepared the security review without bias or discrimination. (Garlock Decl. ¶ 2). Garlock explains that the case management review and recommendation were made consistent with policy that provides

---

[2] The electronic document accessible at ECF No. 1-1 contains multiple exhibits to Stedman's Complaint. The Waiver may be found at pp. 1–7 of ECF No. 1-1.

Further, when referencing exhibits without clear pagination, such as this one, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

that any individual with a "high" scoring detainer is not eligible for minimum-security status. (Id.; see also Case Management Manual ["CMM"] at 8–19, ECF No. 13-2).[3]

Garlock documented Stedman's ICE detainer (Case #A374600059) in the security review and indicated that he could not recommend Stedman for assignment under DPSCS policy. (Garlock Decl. ¶ 2). Further, under DPSCS policy, if an inmate is not classified as minimum-security status, he cannot be approved for work release. (Id.). Additionally, inmates with a scoreable detainer are ineligible for work release. (CMM at 22). Garlock gave Stedman a copy of the documentation in which the Warden approved the recommendation that Stedman remain classified as medium security, noting that Stedman had an ICE detainer lodged against him. (Stedman Inmate Rs. at 6, ECF No. 13-2).[4]

Garlock contends that Section 7 of the CMM, titled "Security Classification H Security Reduction Profile," states that in order for an inmate to be eligible for a reduction to minimum security, the inmate cannot have a "highest, high, or moderate type detainer." (CMM at 15). The Appendix to CMM Section 7 explains that "[h]ighest detainers, warrants, or pending charges are based on[] . . . a[n ICE] deportation proceeding." (Id. at 18). Additionally, on April 13, 2017, DPSCS issued a Field Support Information Bulletin that states, "Effective immediately, case management staff shall use the below listed criteria when applying the minimum and pre-release profiles. These guidelines are to be used as a tool to maintain consistency when classifying inmates." (Id. at 19). The bulletin

---

[3] The electronic document accessible at ECF No. 13-2 contains multiple exhibits to Garlock's Motion. The CMM may be found at pp. 7–29 of ECF No. 13-2.

[4] The excerpts from Stedman's inmate records may be found at pp. 1–6 of ECF No. 13-2.

further provides that an inmate cannot have a highest, high, or moderate type detainer and be classified as minimum security. (Id.).

Additionally, Garlock notes that Section 13 of the CMM indicates that work release is a privilege unavailable to inmates serving a life sentence. (Id. at 21–22). Inmates are ineligible for work release if serving a natural life term, unless the offense was committed while the inmate was a juvenile and the inmate has been recommended for work release by the Maryland Parole Commission. (Id. at 22). Garlock states that there is no evidence Stedman has been approved by the Maryland Parole Commission for work release. Additionally, inmates with scoreable detainers, such as Stedman, are ineligible for work release. (Id.)

## C.   **Procedural History**

On November 30, 2020, Stedman filed a Complaint against Garlock. (ECF No. 1). Stedman alleges that Garlock discriminated against him because of his immigration status in his annual security review, preventing him from being assigned to minimum security and eligible for work release. Stedman seeks injunctive relief mandating a reduction in his security classification. (Id. at 3). He also seeks compensatory and punitive damages. (Id.).

On May 4, 2021, Garlock filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 13). On June 4, 2021, Stedman filed a Motion for Leave to File an Amended Complaint seeking to add supervisory officials he claims were responsible for creating the policies that prohibited him from progressing to minimum-security status and work release. (ECF No. 17). On June 16, 2021, Stedman filed an

Opposition to Garlock's Motion, (ECF No. 18), which he supplemented on October 6, 2021. (ECF No. 19). Garlock did not file a reply. The matter is now ripe for review.

## II.      DISCUSSION

### A.   Motion to Amend Complaint

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R.Civ.P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). Rule 15 dictates that "[t]he court should freely give leave when justice so requires." Id. Where the proposed amendment to the complaint appears to be futile, this Court has the discretion to deny leave to amend. Tawwaab v. Va. Linen Serv., Inc., 729 F.Supp.2d 757, 769 (D.Md. 2010). Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)).

Although leave to amend must be freely given by this Court, leave to amend may be denied where the proposed amendment "would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Ctr.

v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010). A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation. Id. at 604; see also Deasy v. Hill, 833 F.2d 38, 42 (4th Cir. 1987).

Upon careful consideration of the Motion to Amend, the Court finds that it is untimely as it was filed thirty days after Garlock filed his responsive pleading. The Motion to Amend also changes the nature of the litigation. Stedman's initial Complaint asserted that Garlock violated Stedman's rights in how he processed his security classification review. The Motion to Amend, however, seemingly seeks to attack the validity of the policies Garlock followed in preparing Stedman's classification review, which is beyond the scope of the Complaint itself. Finally, for the reasons that follow, the Motion to Amend is futile, as Stedman's arguments regarding the policies would be unsuccessful. As such, the Court will deny the Motion to Amend.

## B.   **Standard of Review**

### 1.   **Conversion**

Garlock styles his Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d) . . . ." Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby

converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and "a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified

reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C.Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. Stedman was on notice that the Court might resolve Garlock's Motion under Rule 56 because Garlock styled his Motion as a motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Stedman about the Motion and the need to file an opposition. (See Rule 12/56 Letter, ECF No. 14). Stedman filed an Opposition, as well as a declaration in support of his claims, but did not include a request for more time to conduct further discovery. (ECF No. 18). Because the Court will consider documents outside of Stedman's Complaint in resolving Garlock's Motion, the Court will treat the Motion as one for summary judgment.

**2.     Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be

made on personal knowledge" and "set out facts that would be admissible in evidence,"

Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden

shifts to the nonmovant to identify evidence showing that there is a genuine dispute of

material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through

mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan,

526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.

1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson,

477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d

459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material"

is determined by the substantive law, and "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259,

265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the

evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's

favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing

on an essential element of his case where he has the burden of proof, "there can be 'no

genuine [dispute] as to any material fact,' since a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

C.    <u>Analysis</u>

    **1. Eleventh Amendment**

Stedman raises claims against Garlock, a state employee. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from citizen suits in federal court absent state consent or Congressional action. <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. <u>Brandon v. Holt</u>, 469 U.S. 464, 471–72 (1985). The State of Maryland has not waived such immunity for claims brought under § 1983. <u>See</u> <u>Pevia v. Hogan</u>, 443 F.Supp.3d 612, 632 (D.Md. 2020). Accordingly, Garlock is immune from suit for actions taken in his official capacity.

    **2.    Fourteenth Amendment**

Stedman alleges that he has been discriminated against based on his nationality. (Compl. at 3). The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." To bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. <u>Mathews v Eldridge</u>, 424 U.S. 319, 332 (1976); <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983. In the prison context, there are two different types of constitutionally protected liberty interests that may be created by government action. The first is created when there is a state-created entitlement to an early release from incarceration. <u>Bd. of</u>

11

Pardons v. Allen, 482 U.S. 369, 381 (1987) (state-created liberty interest in parole); Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state-created liberty interest in good-conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see Wilkinson v. Austin, 545 U.S. 209, 222–24 (2005) (applying "[t]he Sandin standard"). As the Fourth Circuit noted, "[t]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact specific" comparative exercise. Beverati v. Smith, 120 F.3d 500, 502–03 (4th Cir. 1997).

The Fourth Circuit has explained: "Wilkinson does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." Prieto, 780 F.3d at 250. Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations combined with . . . harsh and atypical conditions" for due process protections to apply. Id. As a prisoner, Stedman is not entitled to the process due persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson, 545 U.S. at 225.

Stedman contends that the failure to assign him to minimum-security status or work release violates his right to due process. But there is no constitutional right for an inmate prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution, nor does a prisoner have a right to participate in a particular program. See Sandin, 515 U.S. at 484 (concluding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmates in relation to ordinary incidents of prison life); McKune v. Lile, 536 U.S. 24, 26 (2002) ("The decision where to house inmates is at the core of prison administrators' expertise."); Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system").

Matters of security classification are reserved to the sole discretion of prison officials. See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994). In analyzing conditions of confinement, the court must consider a correctional system's need to maintain order, discipline, and control. See Sandin, 515 U.S. at 482 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). This Court is unaware of any Maryland law or regulation conferring a protected liberty interest on DPSCS inmates that has been abridged here. Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself." Olim v. Wakinekona, 461 U.S. 238, 250 (1983).

Stedman had no liberty interest in being assigned to minimum security or work release. Garlock's refusal to alter Stedman's medium-security status or assign him to work release, based on both Stedman's sentence and his ICE detainer and arising from policies deemed necessary for the security and safety of the public and correctional institutions, did not violate Stedman's rights. Reviewing Stedman's allegations in the light most favorable to him, there are no genuine issues of disputed material fact and Garlock is entitled to summary judgment in his favor on Stedman's Fourteenth Amendment claims.

### 3.    Equal Protection

To the extent Stedman claims his right to equal protection has been violated, his claim is unavailing. In order to demonstrate a violation of his equal protection rights, Stedman must show that he has been treated differently from similarly situated inmates and that the disparity in treatment is not rationally related to a legitimate governmental interest. See Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989). The exclusion of prisoners with ICE detainers from eligibility for sentence reduction programs and other programming does not violate the Equal Protection Clause. See Galvez v. United States, No. DKC-10-128, 2013 WL 823150, at *3 (D.Md. Mar. 5, 2013) ("[N]o court has held that the Equal Protection Clause is violated by the Bureau of Prisons treating those with detainers—due to their status as illegal aliens or otherwise—differently for purposes of programming eligibility."); Sanchez v. Hunt, No. 5:16-HC-2160-FL, 2017 WL 2787986, at *4 (E.D.N.C. June 27, 2017) (finding no equal protection violation in excluding inmate with ICE detainer from work release and other programming); Garcon v. Cruz, No. 6:14-4332-RMG, 2015 WL

4557146, at *5 (D.S.C. July 28, 2015) (same). As such, Garlock is entitled to summary judgment on Stedman's equal protection claims.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Garlock's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 13). A separate Order follows.

Entered this 29th day of December, 2021.

_____/s/_____

George L. Russell, III
United States District Judge
